IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2017 Session

**JOSEPH MILES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Robertson County**
**No. 96-0237  Jill Bartee Ayers, Judge**

————————————————————

**No. M2016-00556-CCA-R3-ECN**

————————————————————

The Petitioner, Joseph Miles, filed a petition for a writ of error coram nobis, asserting that newly discovered evidence entitled him to relief.  The coram nobis court summarily dismissed the petition, and the Petitioner appeals.  Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Paul Bruno, Nashville, Tennessee (on appeal), and Joseph Zanger, Springfield, Tennessee (at hearing), for the Appellant, Joseph Miles.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; John W. Carney, District Attorney General; and Dent Morriss, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On May 12, 1998, a jury found the Petitioner guilty of the second degree murder of Antwaun Elliott.  The trial court imposed a Range II sentence of forty years, and the Petitioner, as a violent offender, was required to serve one hundred percent of the sentence.  This court has summarized the facts adduced at trial as follows:

On December 22, 1995, the unarmed victim[, Antwaun Elliott,] was shot in the head by the [P]etitioner from a range

of one to two inches in the lobby of an Arby's Restaurant in Springfield. While the [P]etitioner was in prison, his then wife, Lisa Groves, developed a relationship with the victim, a co-worker at a Wendy's Restaurant. Eventually, the victim fathered a child by Ms. Groves and when the [P]etitioner was released from prison, he and the victim had several antagonistic encounters. On one occasion, the victim shot the [P]etitioner in the arm and was charged with aggravated assault, a charge later reduced to simple assault with a disposition of judicial diversion . . . because of what appeared to the [S]tate to be a strong case of self-defense. There was evidence that after his release from prison, the [P]etitioner had stalked the victim, confronting him repeatedly prior to the initial shooting. An eyewitness to the murder testified that the victim was standing in the lobby of the restaurant when the [P]etitioner, armed with a revolver, drove into the parking lot, jumped out of the car, and ran inside. The witness testified that the victim had tried to get away but the [P]etitioner caught him, shot him in the head from close range, and then drove from the scene.

Joseph Miles v. State, No. M2003-01871-CCA-R3-PC, 2005 WL 2438392, at *1 (Tenn. Crim. App. at Nashville, Sept. 26, 2005). On direct appeal, this court affirmed the Petitioner's conviction and sentence. State v. Joseph Miles, No. M1998-00682-CCA-R3-PC, 2001 WL 166368, at *1 (Tenn. Crim. App. at Nashville, Feb. 16, 2001).

Thereafter, the Petitioner filed for post-conviction relief, alleging that his trial and appellate counsel were ineffective. The post-conviction court denied relief, and this court affirmed the judgment of the post-conviction court. See Miles, No. M2003-01871-CCA-R3-PC, 2005 WL 2438392, at *1.

Subsequently, the Petitioner filed a habeas corpus petition in federal court seeking to set aside his conviction and sentence, which was denied, and the denial was affirmed on appeal. Joseph Miles v. Ricky Bell, Warden, No. 3:07-1098, 2010 WL 5211602, at *1 (M.D. Tenn. Dec. 16, 2010), aff'd sub nom. Miles v. Colson, 463 Fed. Appx. 540 (6th Cir. 2012).

On April 4, 2013, the Petitioner, acting pro se, filed the instant petition for a writ of error coram nobis. In the petition, the Petitioner acknowledged that the petition was filed more than a decade after his trial but maintained that the statute of limitations should be tolled. The Petitioner alleged that on October 5, 2012, his federal attorney provided him with statements the police took from four people who had worked with the

Petitioner's ex-wife and the victim. In the statements, the witnesses said that they never heard the Petitioner threaten the victim, which the Petitioner maintained demonstrated that he "harbored no malicious intent" toward the victim. The Petitioner later filed a motion to amend his petition to allege that on June 20, 2014, he learned that Dr. Charles Harlan, the medical examiner who testified at his 1998 trial, was fired on June 30, 1995, "for falsifying or tampering with autopsies, and lying under oath as a witness for hire."

During the pendency of the error coram nobis petition, the Petitioner was represented by numerous attorneys who were forced to file motions to withdraw because of the deterioration of the attorney-client relationship. During a hearing, the sixth attorney also moved to withdraw based upon "a disagreement on the evidence presented in the [p]etition." Before the court responded, the State requested that in view of the "long and tortured history" of the Petitioner's case, the error coram nobis petition "should be stricken and held for the naught that it is." The State argued that the petition contained "nothing justiciable" but made no specific arguments on the Petitioner's claims. The coram nobis court agreed with the State, dismissed the petition, and granted counsel's motion to withdraw. The Petitioner filed a notice of appeal to challenge the coram nobis court's dismissal of the petition, and appellate counsel was appointed.

## II. Analysis

The writ of error coram nobis, which originated in common law five centuries ago, "allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced." State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999). The writ, as first codified in Tennessee in 1858, was applicable to civil cases. Id. at 667-68. In 1955, a statutory version of the writ of error coram nobis was enacted, making the writ also applicable to criminal proceedings. Id. at 668. In general, the writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." Id. at 672.

Currently, the writ is codified in Tennessee Code Annotated section 40-26-105(b):

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated

- 3 -

at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Our supreme court outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

[T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result.

State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" Id. (quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005)). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. Id.

A writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010). The Petitioner's judgment of conviction reflects that it was entered on September 18, 1998. The petition for a writ of error coram nobis was filed in 2013, which clearly was well beyond the one-year statute of limitations. Nevertheless, the one-year statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012).

Our supreme court has stated that "[i]n determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting

- 4 -

Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court has described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Harris, 301 S.W.3d at 145.

In the instant case, the coram nobis court held that the petition "sets forth no justiciable issues that would cause the Court to have jurisdiction herein." However, the petition raised a claim of newly discovered evidence, which is justiciable in an error coram nobis proceeding. Nevertheless, we agree with the dismissal.

The Petitioner contends that he learned in 2012 that the State had interviewed four witnesses on September 16, 1996, and that each of the witnesses stated they did not hear the Petitioner threaten the victim. The Petitioner asserts that none of the statements were included in the State's discovery materials prior to his trial. However, these statements do not establish the Petitioner's "actual innocence" and, therefore, do not require tolling of the statute of limitations.

Finally, regarding the Petitioner's complaints regarding Dr. Harlan, we note this court has repeatedly held "that the revocation of Dr. Harlan's medical license and the findings of the medical disciplinary board d[o] not constitute 'new evidence' as contemplated by the statute which allows coram nobis relief in appropriate cases." Tony C. Woods v. State, No. M2014-01660-CCA-R3-ECN, 2015 WL 6001019, at *2 (Tenn. Crim. App. at Nashville, Oct. 15, 2015) (citing Stephan Lajuan Beasley, Sr., v. State, No. E2013-00695-CCA-R3-CO, 2014 WL 2532401, at *5 (Tenn. Crim. App. at Knoxville, June 2, 2014), and Phyllis Ann McBride v. State, No. M2009-01467-CCA-R3-PC, 2010 WL 2134157, at *4 (Tenn. Crim. App. at Nashville, May 27, 2010)). Accordingly, we conclude that the Petitioner did not establish any basis requiring the tolling of the statute of limitations.

### III.  Conclusion

In sum, we affirm the coram nobis court's dismissal of the petition.


_____
NORMA MCGEE OGLE, JUDGE